UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA BASTO,

                Plaintiff,                      FILE NO. 2:04-CV-258

v.                                        HON. ROBERT HOLMES BELL

MILLWRIGHTS' LOCAL 1102
SUPPLEMENTAL PENSION FUND et al.,

                Defendant.
_____/

**OPINION**

Plaintiff Lisa Basto originally filed her complaint in the Marquette County, Michigan Circuit Court against Defendant Millwrights' Local 1102 and its administrator, TIC International Corporation.  The complaint sought to recover pension benefits owed under an employer-provided benefit plan, payable upon the death of David C. Raymond.  The action was removed by Defendants to this Court, pursuant to the Employees Retirement Income and Securities Act ("ERISA"), 29 U.S.C. § 1132.  The complaint subsequently was amended to add as a party Defendant, the father of the deceased, Edward Charles Raymond.  The parties subsequently stipulated to the dismissal of Defendants Millwrights' Local 1102 and TIC, upon payment into this Court of the fund balance due and owing, approximately $45,000.00.  The matter presently is before the Court on cross motions for summary judgment filed by Plaintiff and the remaining Defendant, Edward Raymond (Docket ##48, 52).  For the reasons

that follow, the Court grants Plaintiff's motion for summary judgment and denies Defendant's

cross motion for summary judgment.

**I.**

On a motion for summary judgment, a court must consider all pleadings, depositions,

affidavits and admissions and draw all justifiable inferences in favor of the party opposing

the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986).  The court, however, "'need not accept as true legal conclusions or unwarranted

factual inferences.'" *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 533 (6th

Cir. 2002) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

The party moving for summary judgment has the burden of pointing the court to the absence

of evidence in support of some essential element of the opponent's case.  *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th

Cir. 1989).  Once the moving party has made such a showing, the burden is on the

nonmoving party to demonstrate the existence of a genuine issue for trial.  *Id.*  Summary

judgment is appropriate when the record reveals that there are no genuine issues as to any

material fact in dispute and the moving party is entitled to judgment as a matter of law.  FED.

R. CIV. P. 56(c); *Kocak v. Community Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th

Cir. 2005).

In order to prove that a triable issue exists, the nonmoving party must do more than

rely upon allegations, but must come forward with specific facts in support of his or her

claim.  *Celotex*, 477 U.S. at 322; *Mulhall v. Ashcroft*, 287 F.3d 543, 550 (6th Cir. 2002).  A

party opposing a motion for summary judgment "may not merely recite the incantation,

'credibility,' and have a trial in the hope that a jury may believe factually uncontested proof."

*Fogery v. MGM Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).  After reviewing

the whole record, the court must determine "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law."  *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d

1304, 1310 (6th Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52

(1986)).  "'[D]iscredited testimony is not [normally] considered a sufficient basis'" for

defeating the motion.  *Anderson*, 477 U.S. at 256-57 (quoting *Bose Corp. v. Consumers

Union of United States, Inc.*, 466 U.S. 485, 512 (1984)).  In addition, where the factual

context makes a party's claim implausible, that party must come forward with more

persuasive evidence demonstrating a genuine issue for trial.  *Celotex*, 477 U.S. at 323-24;

*Matsushita*, 475 U.S. at 586-87; *Street*, 886 F.2d at 1480.  "A mere scintilla of evidence is

insufficient; 'there must be evidence on which a jury could reasonably find for the [non-

movant].'" *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005) (quoting *Anderson*, 477

U.S. at 252).

## II.

At the time of his death on October 31, 2003, David Charles Raymond was unmarried.

He had, however, been involved in a relationship with Plaintiff Lisa Basto since 1996 and

had fathered Basto's child, Chelsey Ann Raymond, in 1998.

On June 26, 1997, David Raymond signed a beneficiary card designating "Lisa Raymond, wife" as first beneficiary of his death benefit and "Ed Raymond, father" as second beneficiary.  The card further identified "Lisa Raymond's" address as that of David Raymond's father, Edward Raymond.  The beneficiary card also listed Lisa's date of birth as September 16, 1968.  (Def. Ex. 1, Beneficiary designation card.)  Basto's actual date of birth is September 16, 1967.  (Pl. Ex. 2, Basto dep. at 18.)

The parties dispute whether Lisa Basto and David Raymond were engaged at the time he signed the beneficiary card, but it is undisputed that David and Lisa never married.  Basto testified that she and Raymond began living together in Laurium, Michigan in 1996.  They became engaged in the spring of 1997 and Raymond gave her a ring, which she wore thereafter.  (Pl. Ex. 2, Basto dep. at 5, 8.)  In 1998, Raymond purchased a house in the Calumet-Laurium area, where Basto lived with Raymond and with their daughter, who was born in June 1998.  Basto and Raymond never terminated their engagement before Raymond's death. During that period, Raymond worked in other parts of the state more than half of the time and spent approximately eight to ten days per month with Basto and their daughter.  (Pl. Ex. 2, Basto dep. at 3-5, 12.)  Basto testified that, after their daughter was born, Basto stayed home caring for Chelsea.  (Pl. Ex. 2, Basto dep. at 18.)

At the time of Raymond's death, Basto was staying with her parents in Marquette County so that her parents could watch her daughter while Basto attended a one-year phlebotomy program at Northern Michigan University.  Basto testified that she did not move

out of the Laurium home, but began in 2002 or 2003 to stay in Marquette County while Raymond was away working in the lower peninsula.  (Pl. Ex. 2, Basto dep. at 9-10, 17-18.)

Between 1997 and 2003, David Raymond and Basto traveled to visit his father in Dearborn, Michigan a number of times.  Defendant Edward Raymond also came to the upper peninsula of Michigan to visit them on two or three occasions.  Basto testified that Edward Raymond was aware that David Raymond and Basto were engaged.  Basto testified that she hesitated to marry David Raymond because he was gone to the lower peninsula so much of the time.  Between 1997 and 2003, the couple separated on two occasions for one or two months each time, largely because of David's lengthy absences. (Pl. Ex. 2, Basto dep. at 9-10.)  Basto told David that she would marry him once they bought a home downstate.  In 2002 or 2003, David Raymond showed her a house in Waterford, Michigan that he was considering buying.  (Pl. Ex. 2, Basto dep. at 7-8.)

Plaintiff Basto testified that David Raymond told her that he was naming her as beneficiary of his pension plan.  Their daughter was carried as a dependent on his health insurance plan.  Plaintiff also was listed as "Lisa Raymond" and designated as first beneficiary on David Raymond's Detroit Carpenters' Pension Plan, which has been paid to her.  (Pl. Ex. 2, Basto dep. at 9, 13.)

David Raymond died while traveling to the upper peninsula to meet Basto and their daughter at the Calumet home.  Basto testified that David Raymond used his father's Dearborn address as his mailing address for much of his mail.  (Pl. Ex. 2, Basto dep. at 11-12.)

In 1997, at the time the designation of beneficiary form was signed, David was living with Lisa Basto in Laurium.  (Pl. Ex. 1, Raymond dep. at 6.)  Edward Raymond testified that, prior to 1997, he had met Lisa Basto once, when she came with David to visit Edward in Dearborn.  David and Plaintiff were living together at the time of the visit.  (Pl. Ex. 1, Raymond dep. at 8.)  Edward visited his son and Basto in Laurium in 1997.  (Pl. Ex. 1, Raymond dep. at 5.)  Edward Raymond testified that David Raymond and Basto continued to live together for about one year after his visit.  (Tr. 6-7.) David never told him that he was engaged to Lisa Basto.  (Pl. Ex. 1, Raymond dep. at 6.)  However, according to Edward, his son never spoke of any other "Lisa" than Basto and he had not been introduced to another girlfriend for 10 or 15 years before meeting Basto.  (Pl. Ex. 1, Raymond dep. at 6.)

Upon being shown a copy of the beneficiary designation form, Edward Raymond acknowledged what appeared to be his son's signature.  The document named "Lisa Raymond wife" and gave Edward's Dearborn address as the address for both David and Lisa.  Neither David Raymond nor Lisa Basto lived at the Dearborn address at the time of the designation, and Lisa had never lived there.  (Pl. Ex. 1, Raymond dep. at 6-77; Def Ex. 1.)  Raymond also identified his son's signature on checks drawn on a bank account belonging to David C. Raymond and Lisa A. Basto and on a 30th birthday card to Lisa Basto. (Pl. Ex. 1, Raymond dep. at 8-9.)  Edward Raymond acknowledged that, at the time of his death, David was traveling to Calumet.  David had been staying with a friend in Dearborn, but Edward did not know how long it had been since he was in Calumet.  (Pl. Ex. 1, Raymond dep. at 10.)

According to Edward Raymond, his son told him that he wanted to marry Lisa Basto, both before Chelsea was born and later, but Basto would not marry David.  (Pl. Ex. 1, Raymond dep. at 11-12.)  Edward testified that it was David's hope and desire to marry Lisa Basto.  David told Edward that he was leaving his benefit to Lisa Raymond, his wife. Edward understood that he was talking about Lisa Basto.  Edward Raymond testified, however, that David described making the designation to "Lisa Raymond, wife," but Lisa Basto never married David and became Lisa Raymond.  (Pl. Ex. 1, Raymond dep. at 13.)

## III.

At issue in the instant case is whether David Raymond's designation of "Lisa Raymond, wife" as primary beneficiary is valid or whether Edward Raymond should receive the death benefit as secondary beneficiary.[1]  The ERISA statute provides that federal law shall supersede all state laws that "relate to" an ERISA plan.  29 U.S.C. § 1144(a).  A particular state law relates to an ERISA plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines*, Inc., 463 U.S. 85, 97 (1983).  The Sixth Circuit repeatedly and explicitly has held that the designation of beneficiaries has a connection with or reference to an ERISA plan, and ERISA therefore preempts state law governing the designation of beneficiaries. *Tinsley v. General Motors Corp.*, 227 F.3d 700, 704 (6th Cir.

---

[1]In his brief, Defendant also argues the reasons why Plaintiff does not qualify as a "surviving spouse" under the Plan and ERISA. Plaintiff, however, has never contended that she is entitled to recover as the surviving spouse.  The Court, therefore declines to address this uncontested issue.

2000); *Metropolitan Life Ins. Co. v. Pressley*, 82 F.3d 126, 129 (6th  1996); *McMillan v.*

*Parrott*, 913 F.2d 310, 311 (6th Cir. 1990).  *See also Egelhoff v. Egelhoff*, 532 U.S. 141

(2001).   Once it is established that ERISA applies and state law is preempted, a court must

determine the proper beneficiary by looking to "the statutory language or, finding no answer

there, to federal common law which, if not clear, may draw guidance from analogous state

law." *McMillan*, 913 F.2d at 311.

There is a split among the circuits with respect to the manner in which a beneficiary

is determined.  Some circuits, finding no explicit answer in the text of ERISA, immediately

look to the federal common law for the controlling principles for designating beneficiaries.

*See, e.g., Guardian Life Ins. Co. of Am. v. Finch*, 395 F.3d 238, 240-41 (5th Cir.2004); *Hill*

*v. AT&T Corp.*, 125 F.3d 646, 648 (8th Cir.1997); *Estate of Altobelli v. Int'l Bus. Machs.*

*Corp.*, 77 F.3d 78, 81-82 (4th Cir.1996); *Fox Valley & Vicinity Constr. Workers Pension*

*Fund v. Brown*, 897 F.2d 275, 280-81 (7th Cir.1990) (en banc).  "The Sixth Circuit takes a

different view and holds that ERISA itself supplies the rule of law."  *Pressley*, 82 F.3d at

130; *see also McMillan*, 913 F.2d at 311; *Unicare Life & Health Ins. Co. v. Craig*, 157 F.

App'x 787, 791 (6th Cir. 2005).  The Sixth Circuit's rule is grounded in the ERISA provision

that requires a plan administrator to administer the plan "in accordance with the documents

and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D).  *See Craig*, 157 F. App'x

at 791. "We have consistently held that Section 1104(a)(1)(D) of ERISA establishes 'a clear

mandate that plan administrators follow plan documents to determine the designated

beneficiary.'"  *Craig*, 157 F. App'x at 791 (quoting *Pressley*, 82 F.3d at 130; *Central States,*

*Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 678 (6th Cir.2000) ("It

is clear that the law of this Circuit requires the ERISA plan administrator to pay out plan

proceeds in accordance with the ERISA plan documents."); *Mattei v. Mattei*, 126 F.3d 794,

796 n.2 (6th Cir. 1997) (same); *McMillan*, 913 F.2d at 311-12 (same)).  "A participant is

master of his own ERISA plan."  *McMillan*, 913 F.2d at 312.  Therefore, under the Sixth

Circuit's bright-line rule, the Court must examine the plan documents to determine whether

a beneficiary designation has been made in accordance with the plan documents.  *Howell*,

227 F.3d at 678.  The Court must then determine David Raymond's intent by examining the

beneficiary designation on file at the time of his death.  *See McMillan*, 913 F.2d at 312.

The Millwrights' Local 1102 Supplemental Pension Fund Plan includes certain

provisions relating to the designation of beneficiaries.  Article I , Section 21 of the Plan

defines the term "Beneficiary" as follows:

> The term "Beneficiary" shall mean the person or persons described in Section
> 4 of Article IX who are entitled to receive any Death Benefit from the Fund
> upon the death of a Participant, Retired Participant, Disabled Participant, or
> Former Participant.

Despite the paragraph's reference, however, no Article IX is contained in the Plan.  Instead,

Article III, Section 4 describes eligibility for benefits upon death:

> If a Participant dies while he is still a Participant in the Plan and before he has
> drawn out his Account Balance, his Beneficiary shall, subject to the provisions
> of Section 5 of this Article III, be entitled to receive such an annuity as set
> forth in Article III, Section 8 below, or subject to Article III, Section 11, a
> single sum cash payment equal to the deceased Participant's remaining

-9-

Account Balance plus any Contributions made to the Fund on his behalf for the Plan Year in which the Participant died. . . .

Article III, Section 5, in turn, provides as follows:

Every Participant . . . upon whose death a single sum Death Benefit may be payable in accordance with the provisions of the Plan may designate a Beneficiary subject to the following conditions:

If he has not been continuously married for at least one year, he may designate any person or persons he may so desire as his Beneficiary.

. . .

If there is no Beneficiary determinable in accordance with the foregoing provisions of this Section 5, any death benefit shall be paid to the Participant's surviving spouse or, failing the existence of a surviving spouse, to his children in equal shares.  In the event the payment can still not be made in accordance with the above provisions, payment shall be made to the Participant's estate.

The plan summary also describes the designation of beneficiaries:

If you were not married for the year before your death . . . , your Account Balance (plus any contributions made to the Plan for you in the Plan Year that you die) will be paid to your beneficiary.

. . .

To name a beneficiary, you must fill out a beneficiary designation card that you can get from Millwright's local office, return the completed card back to the union office.  It is then forwarded to the fund office.  You should be certain that you have designated the beneficiary of your choice to receive any death benefits payable under the plan.  Remember, after a few years of participation, the death benefit payable if you die before retirement can be very substantial.

(Def. Ex. 2, Plan Summary, Sec. C(1)-(2),  at 6-7.)

Beyond the requirement that the participant complete a beneficiary designation card,

which David Raymond unquestionably met, *cf. Craig*, 157 F. App'x at 792, the plan

-10-

documents do not contain strict limitations on the precision with which beneficiary designations must be made.  The documents do not describe how incomplete or inaccurate designation forms are to be interpreted.  Indeed, the plan language simply requires the participant to "designate any person or person he may so desire as his Beneficiary."  (Plan, Art. III, Sec. 4.)  In interpreting ERISA plan provisions, words are to be given their ordinary meaning. *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998).  The Oxford English Dictionary defines the term "designate" as follows:

> 1. *trans.*  To point out, indicate; to particularize, specify.  2.  Of things: To serve to point out; to be an indication of.  With *compl.*:  To point out, specify as being so and so.  3.  To point out by a name or descriptive appellation; to name, denominate, entitle, style. . . .

OXFORD ENGLISH DICTIONARY (2d ed. 1989).  It is apparent from this definition that the term "designate" does not mandate a precise manner in which a designation must be made.  Instead, a person may be said to have been designated when that person is "pointed out" sufficiently to be identified.

In the instant case, it is undisputed by the parties that "Lisa Raymond, wife" referred to no other person than Lisa Basto.  Edward Raymond admits that, when David Raymond told his father he was leaving his death benefit to Lisa Raymond, his wife, Edward understood that David was referring to Plaintiff Lisa Basto.  (Pl. Ex. 2, Raymond dep. at 21-22.)  No contention is made that, in making his beneficiary designation, David Raymond actually meant some other person.  Further, David Raymond was not married to any other person, whom he might have intended to describe by the word "wife.".

Defendant argues, however, that the designation card completed by David Raymond is fatally defective because of its errors, and therefore the primary beneficiary designee must be ignored. The beneficiary form undisputedly contains several errors. First, as previously noted, Lisa Basto never married David Raymond. She therefore was neither his wife nor held the last name "Raymond." Second, she was listed as residing at the mailing address used by David Raymond, that of his father Edward, an address at which Lisa Basto never resided and at which David did not reside at the time of the designation. Third, the date of birth reported by David on the card was Lisa Basto's correct day and month of birth, but was incorrect as to her year of birth by one year.

Defendant contends that, in *Equitable Life Assur. Soc. of U.S. v. Hughes*, 14 N.W.2d 508 (Mich. 1944), the Michigan Supreme Court established a four-part test to determine which of two claimants should receive life insurance proceeds: (1) correct first name; (2) correct last name; (3) description (*i.e.*, the word "wife"); and (4) the address. In *Hughes*, the insured, William Shears, named "Blanche Shears – wife" as his beneficiary. In actuality, Blanche Shears was the maiden name of the insured's sister, who had been married for years and had taken the name "Blanche Hughes." The insured was married and living with his wife, Corine, at the address listed on the insurance certificate. In finding for the wife, the court concluded that three of the four identifiers (last name, address, and description) all favored the wife, while only the first name matched the sister. *Id.* Defendant contends that, because only one of the four identifiers is correctly stated in the instant case, Plaintiff must lose.

Defendant's argument is misplaced for numerous reasons.  First, as the Court previously has held, Michigan law is preempted by ERISA and wholly inapplicable to the determination before the Court.  Second, even were the case proper authority, it fails to support the proposition for which it is cited.  The *Hughes* court did not establish a test. Instead, it considered which of the various identifiers present in the beneficiary designation supported each of the two claimants, both of whom arguably could have been intended by the designation.  Here, in contrast, Defendant suggests that four and only four identifiers are mandatory factors in a test that should be applied even when the primary beneficiary designation could apply to no person other than Basto.  In other words, Defendant wants to use a nonexistent "test" to eliminate the primary beneficiary designation altogether.  In sum, *Hughes* neither supports nor is applicable to the question before this Court.

Defendant next argues that David Raymond intended that the benefit only go to Lisa Basto if she, in fact, married him and became Lisa Raymond.  In support of this contention, Defendant cites COUCH ON INSURANCE 3D §§ 59.10-59.11 (2005), which address the significance of an inaccurate designation of a beneficiary's identity or relationship to the insured.

As Defendant acknowledges, however, the general rule recited in COUCH supports Plaintiff's position, not Defendant's position, in the instant case:

> The insured may erroneously describe the beneficiary in the contract of insurance, as by stating the beneficiary's name improperly, or by stating the name properly but adding an incorrect description, as by describing a woman as his wife when she, in fact, was not his wife.  In such a situation, the error

> is held to be in the description only and does not prevent the named person from recovering the policy proceeds.

COUCH ON INSURANCE 3D § 59.10.  The explanatory notes further emphasize the rule:

> In general, an error in designation is treated the same as an error in designation of the legatee under a will, since the object is to ascertain the identity of the person actually intended to be benefited by the insured, or the testator, as the case may be, and evidence is admissible to show the identity of the intended beneficiary. . . . If the identity of the intended beneficiary can be established, the error in designation is usually immaterial.  In the relatively rare instance in which the identity of the intended beneficiary cannot be established even by extrinsic evidence, however, the proceeds of the policy then pass to the alternate or contingent beneficiary.

*Id.* (citing *Oates v. Hodge*, 713 S.W.2d 361 (Tex Ct. App. 1986) (holding that designation that was made when insured was living with a woman, which correctly described the first name, but incorrectly described the last name and relationship of the woman, was valid because the person could be identified)).

The treatise notes the following exception:

> The exception is when the designation is in a form in which a person who is identified by name is also described by a word of relationship which is incorrect or false.  The resulting question whether the existence of the specified relationship was intended as a condition which the beneficiary msut satisfy in order to receive the benefit of the contract of insurance, or whether the false description may be ignored, is addressed in Couch on Insurance 3d, § 59.11.

*Id.*

The reference to COUCH ON INSURANCE 3D §§ 59.11, however, does little to clarify what falls outside the ordinary rule, providing that,

> When a beneficiary is designated by name, but words of relationship are then added which are erroneous, it is necessary to determine what, or more accurately who, the insured intended as the beneficiary.

*Id.*

While COUCH is of interest insofar as it is consistent with ERISA, it nonetheless constitutes a general summary of state laws that are broadly preempted by ERISA. As the Court previously has stated, the Sixth Circuit has concluded that, in evaluating a beneficiary designation dispute, the role of the court is to determine the intent of the participant, so long as that intent has been expressed in the manner required by the plan documents. *McMillan*, 913 F.2d at 312. For purposes of argument, the Court will assume that the referenced sections of COUCH are consistent with the law under ERISA.

As the sole evidence supporting his contention that David Raymond intended Lisa Basto to receive the death benefit only if she married David, Defendant relies upon the following testimony from his deposition:

> Q:   Do you have reason to believe that when he named Lisa Raymond as beneficiary of this benefit to be paid in the event of his death that he intended that benefit to be paid to somebody?
>
> A.   Yes.
>
> Q.   And to you have an opinion as to who he intended this benefit to be paid to?
>
> A.   It's not an opinion, it's what I heard from Dave. His wife Lisa Raymond. She never married him.
>
> Q.   And when did he express that opinion to you – express that sentiment to you?

A.    The first time, we were riding in the car and he mentioned that I was going to be a grandfather and I said, "When did you get married?" And he says, "I didn't." And I says, "What do you mean?" He says, "I want to marry her but she does not want to marry me," quote. And then afterwards on occasions I asked him if they were planning on getting married and he says she would not marry him.

Q.    And who was it that he was talking about when he said she would not marry him?

A.    Lisa Basto.

Q.    So can we agree that it was at least his hope or desire to marry Lisa Basto?

A.    Yes.

Q.    And can we agree that in doing so it was his hope and desire that she would become Lisa Raymond?

A.    Yes.

Q.    And when he told you that he – as I understand it, he told that he was leaving this benefit for Lisa Raymond, his wife?

A.    Yes.

Q.    And who did you think he was talking about when he said that?

A.    Lisa Basto.

MR. GREEN: I have no further questions.

EXAMINATION BY MR. VOZZA:

Q.    Just so we're not confused here, when you – the last question you just answered, when the – the benefit was to be paid to Lisa Basto, at least according to your understand; correct? [sic] Is that what you testified?

A.    No.

Q.    Go ahead.  Could do –

A.    The benefit was supposed to be paid to Lisa Raymond, his wife.

Q.    Okay.  And did she ever –

A.    My wife.

Q.    I'm sorry.  Your wife?

A.    No, his wife.

Q.    His wife?

A.    Yeah, but the way he – the way it was worded or the way he – the question as I understand – "Lisa Raymond, my wife."

Q.    Okay.  And she never became his wife?

A.    No; no.

(Pl. Ex. 1, Raymond dep. at 21-22.)  Defendant Raymond argues that the quoted colloquy is sufficient evidence in opposition to a motion for summary judgment to support an inference that marriage to David Raymond was a necessary condition for Basto to recover as a beneficiary.

The Court disagrees.  Although Defendant Raymond's testimony suggests that he might believe that David intended that his designation of his primary beneficiary was dependent on Lisa Basto marrying him, at no time does he explicitly testify that his son either directly told him or implied that intent.  Nor does he supplement his deposition testimony with a more precise affidavit.  On a motion for summary judgment, a party opposing the motion must introduce sufficient evidence to demonstrate the existence of a genuine issue

for trial.  *Celotex*, 477 U.S. at 323; *Street*, 886 F.2d at 1479.  As his sole contrary evidence

about David's intent, Defendant expressly invokes an exception to the general rule that errors

in designation are irrelevant unless they demonstrate an intent to impose a condition

precedent.  He therefore must come forward with specific facts in support of his claim.

*Celotex*, 477 U.S. at 322; *Mulhall*, 287 F.3d at 550.   While the Court must draw all

justifiable inferences in favor of the party opposing the motion, *Matsushita*, 475 U.S. at 587,

it "'need not accept as true legal conclusions or unwarranted factual inferences.'"  *Michigan*

*Paytel Joint Venture*, 287 F.3d at 533.  On the evidence before the Court, the inference about

David's intent that Raymond seeks is itself based on another inference about his own less

than specific testimony.  Such a request for inference upon inference is, quite simply, an

insufficient factual basis to support the conclusion that David Raymond intended that his

designation of Lisa Basto (Raymond) was dependent upon her marriage to David Raymond.

This is not a case in which there is a genuine dispute as to the party intended to be

designated by the description, "Lisa Raymond, wife."  Indeed, Edward Raymond admits that

he knew that David Raymond was referring to Lisa Basto when he told his father that he was

designating "Lisa Raymond, wife" as his beneficiary.  And Edward Raymond either

acknowledges or does not directly dispute the nature and extent of the relationship between

Lisa Basto and David Raymond, the length of time they had lived with one another,

continuously or otherwise, and the fact that his son wanted to marry Lisa Basto.  He has

admitted that he believed his son intended his first beneficiary designation to be meaningful,

not fanciful.  In sum, he has introduced absolutely no evidence that his son intended the beneficiary designation to mean anyone other than Lisa Basto.

While an individual's intent ordinarily is a question of fact that is not appropriately decided at summary judgment, summary disposition is proper when no genuine issue exists regarding that intent.  *See Continental Ins. Co. v. Adams*, 438 F.3d 538, 540 (6th Cir. 2006); *Gencorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 819 (6th Cir. 1999).  In the absence of adequate testimonial support for Defendant's sole argument about David Raymond's intent, Plaintiff is entitled to judgment as a matter of law.  *See Anderson*, 477 U.S. at 251-52; *Gencorp.*, 178 F.3d at 819.

### IV.

For the foregoing reasons, the Court grants Plaintiff's motion for summary judgment and denies Defendant Raymond's cross motion for summary judgment.  A judgment consistent with this opinion shall be entered.

Date:    March 24, 2006          /s/ Robert Holmes Bell
                                 ROBERT HOLMES BELL
                                 CHIEF UNITED STATES DISTRICT JUDGE